**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRIAN R. KYSER, | ) | CASE NO. 4:18-cv-01040 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| *Acting Comm'r of Soc. Sec.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Brian R. Kyser (hereinafter "Plaintiff"), challenges the final decision of

Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter

"Commissioner"), denying his application for Supplemental Security Income ("SSI") under Title

XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*. ("Act"). This court has jurisdiction

pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate

Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and

Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the

Commissioner's final decision be AFFIRMED.

### I. Procedural History

On December 6, 2012, Plaintiff filed his application for SSI, alleging a disability onset date

of October 30, 2012. (Transcript ("Tr.") 456). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 248-326). Plaintiff attended a hearing on February 6, 2012, without counsel, but informed the ALJ of his wish to have representation. (Tr. 157-165). No testimony was taken. *Id*. Plaintiff attended and participated in a new hearing on June 11, 2015, was represented by counsel, and testified. (Tr. 166-202). A vocational expert ("VE") also participated and testified. *Id*. On June 10, 2015, the ALJ found Plaintiff not disabled. (Tr. 296). On September 8, 2016, the Appeals Council remanded the matter back to the ALJ to obtain additional information (including updated medical records), consider the claimant's maximum residual functional capacity ("RFC") and provide appropriate rationale in support of the assessed limitations, and, if warranted by the expanded the record, obtain evidence from a VE. (Tr. 303-306). A new hearing was held on February 8, 2017, where Plaintiff, represented by counsel, and a VE testified. (Tr. 203-247). On April 18, 2017, the ALJ found Plaintiff not disabled. (Tr. 142). On April 3, 2018, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-6). On May 4, 2018, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 10, 12 & 13).

Plaintiff asserts the following assignments of error: (1) the ALJ failed to address several Listings; (2) the ALJ abused his discretion by failing to call a medical expert; and (3) the ALJ violated the treating physician rule. (R. 10).

## II. Evidence

### A. Relevant Medical Evidence[1]

#### 1.  Treatment Records

On November 27, 2012, Plaintiff was seen by Kruti Shah, M.D., who indicated that Plaintiff "could have hypertriglyceridemia, as well as alcohol-induced pancreatitis. Very likely, he has new onset type 2 diabetes mellitus. We will get him dietary education, change him to a fixed carbohydrate diet, start him on Lantus 20 units plus metformin plus lisinopril…." (Tr. 778).

On February 1, 2013, Plaintiff was seen by Sudershan K. Garg, M.D., for an anemia evaluation. (Tr. 1348). Dr. Garg indicated that Plaintiff "has what looks like anemia or chronic disease due to his heavy alcohol intake. Patient has been told not to start drinking again … He was also advised that he should try to control his diabetes … so that he does not develop neuropathy and other complications there from. His blood picture has already improved since he quit drinking." (Tr. 1348).

On March 21, 2013, biopsies revealed mild non-specific chronic active inflammation and minimal chronic gastritis. (Tr. 865).

On March 28, 2013, a liver biopsy revealed steatohepatitis with mild activity (Grade 1 of 3); mild fibrosis (Stage I of IV), mild hemosiderin deposition consistent with alcohol abuse, not diagnostic of genetic hemochromatosis. (Tr. 847-848).

On June 30, 2013, an abdominal ultrasound revealed findings compatible with fatty infiltration of the liver and pancreas. (Tr. 1111).

---

[1]  The recitation of the evidence is not intended to be exhaustive given the extraordinary length of the records. The court does not aim to include every bit of relevant information cited by the parties, but it has endeavored to include those portions of the record most essential to the assignments of error raised.

On July 30, 2013, psychiatrist Vincent Paolone, M.D., diagnosed mood disorder NOS and alcohol dependence. (Tr. 911).

On September 15, 2013, an abdominal CT scan revealed areas of acute pancreatitis and borderline-sized liver with diffuse fatty infiltration. (Tr. 1115-1116).

On March 3, 2015, Plaintiff was seen for follow up of pancreatitis flare up by Shawn Bonner, D.O. (Tr. 988-993). Dr. Bonner assessed acute pancreatitis, uncomplicated diabetes mellitus Type II, gastroesophageal reflux disease (GERD), and hypertension. (Tr. 991-992).

On March 5, 2015, Plaintiff was seen by Dr. Yossef for a follow-up with complaints of nausea and abdominal pain. (Tr. 1421). On examination, he weighed 135 pounds.[2] (Tr. 1425). The impression was chronic pancreatitis, nausea, and hypertriglyceridemia. (Tr. 1423).

On April 7, 2015, Plaintiff was admitted to the hospital, at which time he weighed 122 pounds with a BMI of 16.54. (Tr. 1100). On April 10, 2015, his discharge diagnoses were depression with anxiety, alcohol abuse, diabetic ketoacidosis, uncontrolled diabetes mellitus Type II, and acute pancreatitis. (Tr. 1105).

Ten days later, on April 17, 2015, Plaintiff weighed 128 pounds at his functional capacity evaluation.[3] (Tr. 1314).

On May 7, 2015, Plaintiff was seen by Dr. Shah; he admitted being non-compliant with his medications, diet, and blood glucose monitoring. (Tr. 1375). He also admitted sleeping excessively, ten to twelve hours. *Id*. At that time, he weighed 136 pounds with a BMI of 19.0, representing an eleven-pound weight loss since November 20, 2014. (Tr. 1376). Dr. Shah noted

---

[2]  Using the formula provided in 20 C.F.R. Part 404, Subpt. P, App. 1, Plaintiff's BMI given his height of 6'0" and weight of 135 pounds would be 18.31.

[3] Using the formula provided in 20 C.F.R. Part 404, Subpt. P, App. 1, Plaintiff's BMI given his height of 6'0" and weight of 128 pounds would be 17.36.

Plaintiff was not on statin due to elevated liver function tests. *Id*. She diagnosed diabetes mellitus, hypertension, hyperlipidemia, hypertriglyceridemia, and tobacco use. (Tr. 1376-1377).

On June 25, 2015, Plaintiff was seen by Sayed Yossef, M.D., a gastroenterologist. (Tr. 1417). Plaintiff reported losing over 50 pounds over the last six months. *Id*. At the exam, he weighed 137 pounds and six ounces.[4] (Tr. 1418). Plaintiff denied nausea, vomiting, diarrhea, chills, or fever. (Tr. 1417). Dr. Yossef's impression was chronic pancreatitis, hypertriglyceridemia, epigastric pain, and abdominal pain. (Tr. 1418).

On November 3, 2015, a CT of the abdomen revealed "[s]igns of chronic pancreatitis, but there is no indication for superimposed acute," and "[d]iffuse fat infiltration of the liver." (Tr. 1664). The same date, Plaintiff was diagnosed with the following active problems: diabetic ketoacidosis; Type I diabetes mellitus; chronic pancreatitis; epigastric abdominal pain; peptic ulcer disease; nausea and vomiting; possible acute sinusitis; and tobacco abuse. (Tr. 1663).

On November 11, 2015, Plaintiff was seen by Alex Heintzelman, M.D., wanting to establish care. (Tr. 1476). Plaintiff weighed 133 pounds with a BMI of 18.06. (Tr. 1477). Plaintiff was assessed with alcohol-induced chronic pancreatitis (stable), peptic ulcer disease (improving), Type I diabetes mellitus with ketoacidosis and without coma, and nicotine dependence. (Tr. 1479).

On November 20, 2015, Plaintiff complained to Dr. Shah of neuropathic pain in his feet but otherwise no new complaints. (Tr. 1464). Plaintiff's weight increased to 139 pounds with a BMI of 19.4. (Tr. 1465).

On December 22, 2015, Plaintiff was admitted to the hospital complaining of vomiting. (Tr.

---

[4] Using the formula provided in 20 C.F.R. Part 404, Subpt. P, App. 1, Plaintiff's BMI given his height of 6'0" and 137 pounds would be 18.59.

1675). Plaintiff denied any diarrhea, constipation, urinary or fecal incontinence, dysuria, or drug use. *Id*. Plaintiff was dehydrated, and his assessment included systemic inflammatory response syndrome. (Tr. 1680). Plaintiff was warned that his non-compliance put him at risk for death. (Tr. 1680-1681).

On June 22, 2016, Kelly Grove Nigro, M.D., noted that colonoscopy results were "suggestive of, but not diagnostic for lymphocytic colitis." (Tr. 1794).

On July 9, 2016, Plaintiff was admitted to the hospital with various complaints, including frequent diarrhea with greasy stools during the last 8 months. (Tr. 1710). On July 10, 2016, Ritha Kartan, M.D., assessed Plaintiff's active problems as diabetic ketoacidosis, acute kidney injury, epigastric and right lower quadrant abdominal pain, nausea and vomiting, colitis, chronic pancreatitis, lymphocyctic colitis, and moderate protein-calorie malnutrition. (Tr. 1736).

On January 19, 2017, nurse practitioner Christina Fierro noted that Plaintiff's liver enzymes were trending upwards despite decreasing Fenofibrate dose. (Tr. 1829).

On November 12, 2016, the results a CT scan of Plaintiff's abdomen yielded an impression of diffuse hepatic steatosis, calcification of the pancreas related to chronic pancreatitis, and a "[l]arge air-fluid level in the distended distal clinical correlation for gastroparesis." (Tr. 1787).

On February 9, 2017, an ultrasound of the liver was "unremarkable except for diffuse fatty infiltration." (Tr. 1959). The impression was "[n]o focal liver lesions. Liver stiffness values suggesting moderate to severe fibrosis. Suspect adenomyosis of the gallbladder." *Id*.

### 2.  Medical Opinions Concerning Plaintiff's Functional Limitations

#### a. Physical Limitations

On May 2, 2013, State Agency physician Jeffrey Vasiloff, M.D., reviewed Plaintiff's records and asserted that Plaintiff could lift up to 10 pounds occasionally and frequently,

stand/walk for six hours and sit for six hours in an eight-hour day. (Tr. 256). He further opined that Plaintiff could occasionally climb ramps/stairs; frequently stoop, kneel, crouch, and crawl; but never climb ladders, ropes, and scaffolds. (Tr. 257). Plaintiff also had no manipulative, visual, communicative or environmental limitations. *Id*.

On August 15, 2013, State Agency physician Gary Hinzman, M.D., asserted that Plaintiff could lift up to 50 pounds occasionally and 25 pounds frequently, sit and stand/walk for six hours each in an eight-hour day, and never climb ladders/ropes/scaffolds. (Tr. 275-276). Plaintiff also had no manipulative, visual, communicative or environmental limitations. *Id*.

On April 17, 2015, Plaintiff underwent a functional capacity evaluation. (Tr. 1314-1347). This evaluation indicated that Plaintiff could perform medium exertional work as defined in the Dictionary of Occupational Titles ("DOT"). (Tr. 1316).

On April 24, 2015, Plaintiff's gastroenterologist Dr. Yossef completed a physical RFC assessment. (Tr. 1043-1045). Dr. Yossef indicated that Plaintiff's ability to lift/carry, stand/walk, and sit were not affected by his impairments. (Tr. 1043-1044). He specifically noted that Plaintiff could sit for eight hours, and stand and walk for six hours in an eight-hour day. (Tr. 1044). He also noted that Plaintiff could occasionally climb, balance, kneel, crawl, bend, stoop, and crouch. *Id*. While he noted it was difficult for Plaintiff to be "flexible" with pain, he also reported that Plaintiff's impairments did not affect his ability to reach, handle, feel, push/pull, see, hear, speak, or grip strength. (Tr. 1045). However, Dr. Yossef found that some environmental limitations were warranted due to Plaintiff's pancreatitis, alcohol abuse, and hyperlipidemia. *Id*.

On June 2, 2015, Shawn Bonner, D.O., wrote a brief letter stating in its entirety: "Brian has multiple medical problems- diabetes, chronic pancreatitis, and nocturnal hypoxia. These problems make it impossible for him to perform in the workplace. I believe he is a candidate for

disability." (Tr. 1360).

On April 14, 2016, Plaintiff's primary care physician, J. Alex Heintzelman, M.D., wrote a letter stating that Plaintiff suffered from moderate to severe diabetic peripheral neuropathy. (Tr. 1483). Dr. Heintzelman noted that he was attempting to achieve better control of said condition with medication, but pain made it difficult for Plaintiff to stand for long periods of time, which could result in loss of sensation in the feet, muscle cramps, and increased pain. *Id*.

On May 24, 2016, Dr. Yossef wrote a letter stating that Plaintiff that Plaintiff "[i]s a patient at our office and is currently under our care for his severe diarrhea and fecal incontinence, and is unable to work. The patient is scheduled to have a colonoscopy on June 20, 2016 and will be assessed at that time." (Tr. 1961).

On July 5, 2016, Dr. Yossef wrote a letter stating that Plaintiff "is currently under our care for fecal incontinence, lymphocytic colitis and pancreatitis. Patient is currently under going treatment for this and will not be able to work for 6 months. He has a follow up appointment scheduled in 8 weeks to assess how the treatment is helping him." (Tr. 1960).

On January 30, 2017, Dr. Yossef completed another physical RFC assessment, this time indicating that Plaintiff could lift no more than five pounds occasionally and sit, stand and walk for one hour each in an eight-hour day. (Tr. 1844-1847). Nevertheless, he opined that Plaintiff could occasionally climb, balance, kneel, crawl, stoop, and crouch. (Tr. 1845). He further advised that Plaintiff avoid heights, moving machinery, temperature extremes, and chemicals. (Tr. 1846). He believed Plaintiff would be absent from work more than three times per month. (Tr. 1847). He explained that Plaintiff suffers from acute and chronic pancreatitis resulting in frequent hospitalizations, weight loss, dehydration, nausea, vomiting, and diarrhea daily. (Tr. 1846).

On February 2, 2017, Luay Shayya, M.D., completed a physical RFC assessment indicating Plaintiff had no limitations in his ability to stand, walk, and sit—retaining the ability to do each for eight hours. (Tr. 1854). Further, Plaintiff could frequently climb, stoop, and crouch, and occasionally balance, kneel, and crawl. *Id*. Dr. Shayya assessed no environmental restrictions and no limitations in Plaintiff's ability to reach, handle, feel, push/pull, see, hear, or speak. (Tr. 1855). Finally, Dr. Shayya opined Plaintiff would not miss any work on account of his impairments. (Tr. 1856).

On February 7, 2017, Dr. Heintzelman wrote another letter stating that "[Plaintiff] presented me with some standard functional capacity evaluation paperwork which I was unable to complete because I do not know him well enough to be able to accurately estimate his physical capabilities." (Tr. 1861). Nevertheless, Dr. Heintzelman noted that Plaintiff suffered from "significant medical conditions which would limit his ability to work," explaining that over the past five years Plaintiff was initially required to "give himself insulin numerous times daily" resulting in two to three daily interruptions of work. *Id*. Dr. Heintzelman noted that from June 2013 to May 2016, Plaintiff presented to the emergency room ("ER") with diabetic ketoacidosis about twenty times and was generally admitted. *Id*. Plaintiff also struggled with "recurrent episodes of pancreatitis, likely worsened by alcohol consumption, which eventually progressed to chronic pancreatitis," resulting in significant abdominal pain, nausea, and vomiting. *Id*. Plaintiff's symptoms vary, but "[o]n bad days, [Plaintiff] would likely not be able to work safely secondary to distractions from moderate to severe pain." *Id*. Furthermore, Dr. Heintzelman noted the presence of "painful peripheral neuropathy" that made it difficult to stand, walk, or run for "extended periods of time." (Tr. 1861-1862). He believed Plaintiff could stand for no more than 30 minutes without experiencing pain that would take him off task. (Tr. 1862). Dr. Heintzelman

also noted Plaintiff used an insulin pump and observed that Plaintiff would have to void tasks that ran the risk of dislodging tubes entering his abdomen. *Id*. Finally, he also advised that Plaintiff should not operate heavy equipment due to the drowsiness side effects of his medications. *Id*.

On February 10, 2017, Dr. Yossef advised that Plaintiff could not work for another six months due to fecal incontinence, lymphocytic colitis and pancreatitis. (Tr. 1958).

On February 7, 2017, a checklist-style physical RFC assessment was completed by an individual whose signature is illegible. (Tr. 1954-1957). This individual opined that Plaintiff could lift/carry 15 pounds or less, and could stand/walk four to five hours, and sit for eight to ten hours in an eight-hour day. (Tr. 1954-55). The individual also opined that Plaintiff could perform postural activities occasionally. (Tr. 1955). The individual checked boxes noting that Plaintiff's ability to reach, handle, feel, push/pull, and see were affected by his impairments, but left blank the areas seeking an explanation or medical findings supporting the assessment. (Tr. 1956). According to the assessment, Plaintiff should avoid heights, moving machinery, temperature extremes, dust, humidity, and vibrations. *Id*. The individual estimated Plaintiff would be absent from work two to three times per month. (Tr. 1957). The form contains no explanations and no diagnoses supporting the assessed limitations.[5] (Tr. 1954-1957).

### b. Mental Limitations

On March 14, 2013, Andrea M. Van Estenberg, Ph.D., conducted a mental consultative examination. (Tr. 836-842). She diagnosed general anxiety disorder and mood disorder. (Tr. 840). She opined that Plaintiff is expected to be able to understand and apply instructions in the

---

[5] Because Plaintiff has not challenged the ALJ's credibility determination or the reliability of the VE's testimony, the court foregoes any discussion of the hearing testimony.

work setting consistent with his average intellectual functioning; that Plaintiff "may experience a sense of reduced effectiveness when his depression and anxiety increase, objective changes at a level prompting performance concerns by others may be expected;" that while Plaintiff made an unremarkable social presentation, "[t]here is an expected limitation in his ability to conform to social expectations in a work setting due to reported symptoms including a history of arguments and negative interactions;" and that she "expected [Plaintiff] to respond appropriately to work place pressures with minimal concentration and socialization expectations." (Tr. 842).

On March 24, 2013, State Agency psychologist Carl Tishler, Ph.D., completed a mental RFC assessment, and found that Plaintiff had no understanding and memory limitations but was moderately limited in the following areas: the ability to carry out detailed instructions; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to interact appropriately with the general public; the ability to accept instructions and respond appropriately to criticism from supervisors; and the ability to respond appropriately to changes in the work setting. (Tr. 257-259). He was found to have no significant limitations in other domains. *Id*. Dr. Tischler determined that Plaintiff could maintain attention and concentration to complete one to three step tasks; with continued sobriety Plaintiff was capable of relating to supervisors and co-workers on a superficial, as needed basis; and, Plaintiff is able to tolerate a public setting based upon his involvement with AA which is public and ability to work in restaurant maintenance. (Tr. 258-259).

On August 18, 2013, State Agency psychiatrist David Demuth, M.D., completed a mental RFC assessment, and found that Plaintiff had no understanding and memory limitations but was moderately limited in the following areas: the ability to carry out detailed instructions; the ability

to maintain attention and concentration for extended periods; the ability to work in coordination with or in proximity to others without being distracted by them; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and, the ability to respond appropriately to changes in the work setting. (Tr. 276-278). Dr. Demuth found that Plaintiff could complete one to four step tasks and would work best in small groups or alone. (Tr. 277). He also found that Plaintiff could respond appropriately to workplace pressures in a setting where tasks are routine and not fast-paced. (Tr. 278).

On January 27, 2017, a checklist-style mental RFC assessment was completed by an individual whose signature is illegible but who Plaintiff asserts is Dr. Paolone.[6] (Tr. 1837-1839). According to the assessment, Plaintiff had "poor or none" ability to relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stresses, function independently, or maintain attention and concentration. (Tr. 1837). Furthermore, the assessment indicated that Plaintiff had "poor to none" ability to understand, remember, and carry out complex or detailed but not complex job instructions. (Tr. 1838). Finally, it was indicated that Plaintiff had "poor to none" ability to behave in an emotionally stable manner, to relate predictably in social situations, or to demonstrate reliability. *Id*. The form contains no explanations and no diagnoses supporting the assessed limitations. (Tr. 1837-1839).

---

[6] Dr. Paolone's signature appears elsewhere in the record. (Tr. 909, 1034). In the court's view, those signatures appear different than the signature at the end of this assessment.

12

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's

impairment(s) does prevent him from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

## IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since November 13, 2012, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: diabetes, alcohol-induced chronic pancreatitis, colitis, hypertension, gastroparesis, mood disorder, personality disorder, and neuropathy (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he can frequently climb ramps and stairs, but never ladders, ropes, or scaffolds. He can frequently stoop, kneel, crouch, and crawl. He must avoid concentrated exposure to hazards, such as unprotected heights. The claimant is limited to unskilled work, consisting of simple, routine tasks, performed in a static environment that would experience few, if any work-related changes, with no strict time or strict high production quotas. The claimant can have frequent superficial interaction with others, superficial defined as no sales, arbitration, conflict resolution, direction, management, or group tasks.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on *** and was 38 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of

disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.  The claimant has not been under a disability, as defined in the Social Security Act, since November 13, 2012, the date the application was filed (20 CFR 416.920(g)).

(Tr. 127-142).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B. Plaintiff's Assignments of Error**

**1. Listings**

In the first assignment of error, Plaintiff asserts the ALJ erred by failing to specifically address Listings 12.13, 5.05, 5.06, and 5.08. (R. 10, PageID# 2016, 2032-2038). At Step Three, Plaintiff bears the burden of proving that his impairment meets or medically equals a particular listing. *See Buress v. Sec'y of Health & Human Servs.*, 835 F.2d 139, 140 (6th Cir. 1987). The Listings, located at Appendix 1 to Subpart P of the regulations, describe impairments considered "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a). In other words, a claimant who meets or medically equals the requirements of a listed impairment will be deemed conclusively disabled. *See Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. App'x 411, 414 (6th Cir. 2011).

Nevertheless, "[a] claimant must satisfy *all of the criteria* to meet the listing," *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009) (emphasis added), and all of these criteria must be met concurrently for a period of twelve continuous months. *See* 20 C.F.R. § 416.925(c)(3)-(4); *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); *Blanton v. Soc. Sec. Admin.*, 118 Fed. App'x 3, 6 (6th Cir. 2004) ("When all the requirements for a listed impairment are not present, the Commissioner properly determines that the claimant does not meet the listing.")

The ALJ stated that he considered all of the listings, "with specific emphasis on Listings 9.00 and 11.14," but he also mentions 12.04 and 12.08. (Tr. 128). Because the regulations contain "a hundred or so listings," the case law is clear that "the ALJ need not discuss listings that the applicant clearly does not meet." *Sheeks v. Comm'r of SSA*, 544 Fed. Appx. 639, 641 (6th Cir. 2013) (*citing Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)). Nevertheless, if the record "raise[s] a substantial question as to whether [the claimant] could qualify as disabled," an ALJ should discuss that listing. *Id.*

> A claimant must do more than point to evidence on which the ALJ could have based his finding to raise a "substantial question" as to whether he has satisfied a listing. *Sheeks*, 544 F. App'x at 641-42 (finding claimant did not raise a substantial question as to satisfying the listing for intellectual disability where the ALJ's finding of borderline intellectual functioning simply left open the question of whether he meets a listing and where claimant pointed to only a few pieces of tenuous evidence addressing the listing). Rather, *the claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing. See Sullivan*, 493 U.S. at 530 ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of the criteria, no matter how severely, does not qualify."); *Foster v. Halter*, 279 F.3d 348, 354-55 (6th Cir. 2001) (claimant must satisfy the diagnostic description and one of the four sets of criteria); *see also Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011) (holding that it was not harmless error for the ALJ to fail to analyze Step Three as to an impairment found to be severe at Step Two where the claimant put forth evidence that possibly could meet the relevant listing). Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three.

*Smith-Johnson v. Comm'r of Soc. Sec.*, 579 Fed. Appx. 426, 432-433 (6th Cir. 2014) (emphasis added); *accord Tate v. Berryhill*, 2018 U.S. Dist. LEXIS 117139, *33 (N.D. Ohio, Jul. 13, 2018) (Greenberg, M.J.) (finding that "[w]ithout this specific evidence," a substantial question is not raised and an ALJ, therefore, does not commit reversible error by failing to evaluate a listing at Step Three); *Burgos-Rivera v. Comm'r of Soc. Sec.*, 2018 U.S. Dist. LEXIS 65817, *53 (N.D. Ohio Mar. 28, 2018) (Parker, M.J.) (finding that a claimant's "fail[ure] to flag any evidence"

showing that the claimant satisfied an essential element of the listing in question results in a failure to raise a substantial question).

### a. Listing 12.13

Plaintiff argues that Listing 12.13 for eating disorders requires medical documentation of a persistent alteration in eating or eating related behavior that results in a change in consumption or absorption of food that impairs a claimant's physical or psychological health, and notes that Plaintiff has pancreatitis and gastroparesis, is a diabetic on insulin, and sleeps so excessively that his eating-related behaviors have changed and have resulted in a change in his consumption of food. (R. 10, PageID# 2036). Plaintiff, however, fails to acknowledge that Listing 12.13, which is contained in the 12.00 range of the listings for mental disorders, requires that a claimant have an "eating disorder." While pointing out that he has a mood disorder, personality disorder, depression, and anxiety, Plaintiff points to no evidence in the record suggesting that he suffers from any diagnosed eating disorder, nor does Plaintiff cite evidence suggesting that he suffers from an undiagnosed eating disorder.[7]  (R. 10, PageID# 2037).

### b. Listings 5.05 and 5.06

Listing 5.05 applies to "chronic liver disease" accompanied by the criteria set forth in 5.05A, B, C, D, E, F *or* G. Meanwhile, Listing 5.06 applies to inflammatory bowel disease (IBD)

---

[7] The *Diagnostic and Statistical Manual of Mental Disorders* at 329-354 (American Psychiatric Association, 5th ed. revised, 2013) ("DSM-5") identifies the following eating disorders: pica; rumination disorder; avoidant/restrictive food intake disorder; anorexia nervosa; bulimia nervosa; binge-eating disorder; and an "other specified feeding or eating disorder" that typically incorporates characteristics of the above disorders but fails to meet the all of the diagnostic criteria of any of the above. While DSM-V contains a diagnostic category of "unspecified feeding or eating disorder," that category "is used in situations in which the clinician chooses not to specify the reason that the criteria are not met for a specific feeding and eating disorder, and includes presentations in which there is insufficient information to make a more specific diagnosis (e.g. in emergency room settings)." *Id*. at 354.

documented by endoscopy, biopsy, appropriate medically acceptable imaging, or operative findings that also satisfies the criteria set forth in 5.06A or B. With respect to these listings, assuming for the sake of argument that Plaintiff suffers from chronic liver disease and/or IBD, Plaintiff's brief fails to identify pertinent evidence showing that the claimant satisfied any of the A through G criteria of the listing with respect to Listing 5.05 or the criteria of A or B with respect to Listing 5.06. (R. 10). Plaintiff merely speculates that an "ME [Medical Expert] needs to address whether plaintiff equals any of the 5.00 Listings with particular attention to the Chronic Liver Disease Listing at 5.05 and Inflammatory Bowel Disease Listing at 5.06." (R. 10, PageID# 2038). Such perfunctory statements fall well short of the *Sheeks* standard that requires the claimant to point to specific evidence that demonstrates he reasonably could meet or equal every requirement of a listing.

### c. Listing 5.08

On the first page of his brief, Plaintiff's summary of the issues raised suggests that the ALJ erred by failing to address Listing 5.08. (R. 10, PageID# 2016). The remainder of the brief does not mention the listing again, nor does Plaintiff's reply. (R. 10, R. 13). The court cannot take such a broad and undeveloped assertion and transform it into a substantive argument without improperly becoming an advocate for Plaintiff. It is well established that "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *See, e.g., Kennedy v. Commissioner*, No. 03-1276, 2003 WL 23140056, at *1 (6th Cir. Dec. 12, 2003) (*citing United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)) (rejecting perfunctory argument); *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997), *cert. denied*, 523 U.S. 1050 (1998) (same); *McClellan v. Astrue*, 804 F. Supp.2d 678, 688 (E.D. Tenn. 2011) (court under no obligation to scour record for errors not identified by

claimant). The *McPherson* court aptly stated: "[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones."

*McPherson*, 125 F.3d at 995-996 (internal citations omitted); *accord Paul v. Detroit Edison Co.*, 642 Fed. App'x 588, 592 (6th Cir. 2016); *Design Basics, LLC v. Forrester Wehrle Homes, Inc.*, No. 3:15-cv-666, 2017 U.S. Dist. LEXIS 188005, *8 (N.D. Ohio, Nov. 14, 2017) (declining to "add flesh to the bones of a party's skeletal … argument") (Carr. J.). The court deems any unidentified shortcomings in the ALJ's analysis of the above referenced opinions waived.

Nevertheless, the court finds no general shortcoming in the ALJ's assessment, and Plaintiff's argument remains unavailing. The BMI-based version of Listing 5.08 states:

> *Weight loss due to any digestive disorder* despite continuing treatment as prescribed, with BMI of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 6-month period.

Listing 5.08, 20 C.F.R. Part 404, Subpart P, Appendix 1 (2017) (italics in original).

Plaintiff's recitation of the medical evidence contains a chart of Plaintiff's weight on five separate occasions. (R. 10, PageID# 2023). On two of those occasions, Plaintiff registered a BMI of less than 17.5. (Tr. 1100, 1314). However, even assuming *arguendo* that Plaintiff continued treatment as prescribed, those two BMI measurements were taken only ten days apart—on April 7, 2015 and April 17, 2015 respectively—and not *at least 60 days apart* within a 6-month period as required by the listing. Moreover, by May 7, 2015, Dr. Shah recorded Plaintiff's weight as 136 pounds and on June 25, 2015, Dr. Yossef recorded Plaintiff's weight as 137 pounds—both measurements yielding a BMI in excess of 18.5 and clearly not low enough to satisfy the listing level severity.[8]

---

[8] Plaintiff's brief omits these weight recordings.

### 2. Need for a Medical Expert (ME)

In the second assignment of error, Plaintiff avers the ALJ erred by failing to call an ME to advise the ALJ whether the Plaintiff's impairments met or equaled a listing, specifically Listing 12.13 or one of the aforementioned 5.00 digestive listings. (R. 10, PageID# 2033-2036). Plaintiff also states that the ALJ should have called an ME to advise the ALJ if Plaintiff's non-compliance with his diabetes medications was the unavoidable product of Plaintiff's excessive sleep, or if Plaintiff had any marked or extreme limitations in mental functioning. (R. 10, PageID# 2035-20387). Plaintiff contends the ALJ's decision was the product of his impermissibly "playing doctor" and rendering his own medical opinion. *Id*. at PageID# 2034.

The ALJ addressed Plaintiff's request for an ME as follows:

> It is acknowledged that the claimant's representative requested that the undersigned obtain the opinion of a medical expert, in order to determine if the claimant would meet or equal a listing due to his pancreatitis (Exhibit 33E/1). The nature of the claimant's request is not well taken. The request asked for a consultant exam was not due to the complex nature of the case or lack of evidence but only in the event that a favorable decision could not be issued. HALLEX provides that it is in the discretion of the Administrative Law Judge to order a medical expert opinion in circumstances such as these (See HALLEX I-2-5-34). I deny this request. Obtaining the testimony of a medical expert simply because the decision is not favorable is not a valid reason. The record is very full, and contains many observations and opinions by both treating and examining sources. Thus, there is no need for a consultant exam.

(Tr. 125, *citing* Tr. 645-646).

The Social Security Administrations own guidelines address when a medical expert should be called:

A. When to Obtain a Medical Expert (ME) Opinion

1. When an Administrative Law Judge (ALJ) Must Obtain an ME Opinion (Not Discretionary)

The ALJ must obtain an ME opinion, either in testimony at a hearing or in

21

responses to written interrogatories in the following circumstances:

- The Appeals Council or Federal court ordered an ME opinion.

- There is a question about the accuracy of medical test results reported, requiring evaluation of background medical test data. For more information, see Hearings, Appeals and Litigation Law (HALLEX) manual I-2-5-14 E.

- The ALJ is considering finding that the claimant's impairment(s) medically equals a listing.

2. When an ALJ May Obtain an ME Opinion (Discretionary)

- An ALJ may need to obtain an ME opinion, either in testimony at a hearing or in responses to written interrogatories, when the ALJ:

- Determines whether a claimant's impairment(s) meets a listed impairment(s);

- Determines the usual dosage and effect of drugs and other forms of therapy;

- Assesses a claimant's failure to follow prescribed treatment;

- Believes a claimant's drug addiction or alcoholism may be material to finding a claimant disabled;

- Determines the degree of severity of a claimant's physical or mental impairment;

- Believes an ME may be able to suggest additional relevant evidence because there is reasonable doubt about the adequacy of the medical record;

- Believes an ME may be able to clarify and explain the evidence or help resolve a conflict because the medical evidence is contradictory, inconsistent, or confusing;

- Believes an ME may be able to assist the ALJ by explaining and assessing the significance of clinical or laboratory findings in the record that are not clear;

- Is determining the claimant's residual functional capacity, e.g., the ALJ

> may ask the ME to explain or clarify the claimant's functional
> limitations and abilities as established by the medical evidence of
> record;
>
> - Has a question(s) about the etiology or course of a disease and how it
>   may affect the claimant's ability to engage in work activities at
>   pertinent points in time, e.g., the ALJ may ask the ME to explain the
>   nature of an impairment and identify any medically contraindicated
>   activities; or
>
> - Needs an expert medical opinion regarding the onset of an impairment.

HALLEX § I-2-5-34.

The Northern District of Ohio has stated "[c]learly, the ALJ has discretion to consult an ME, but is *not* required to do so." *Boutros v. Astrue*, 2010 U.S. Dist. LEXIS 97076, 2010 WL 3420296, *3 (N.D. Ohio Aug. 9, 2010) (White, M.J.), *adopted by* 2010 WL 3420288 (emphasis in original). The Sixth Circuit has explained that where "there was already sufficient testimony on [a claiamnt's] impairments in the record for the ALJ to evaluate her … condition and residual functional capacity, the ALJ did not abuse his discretion in denying [the claimant's] requests for additional testing or expert testimony." *Foster v. Halter*, 279 F.3d 348, 356 (6th Cir. 2001); *see also Williams v. Callahan*, 1998 U.S. App. LEXIS 10777, 1998 WL 344073, n. 3 (6th Cir. 1998) ("the ALJ properly determined that the record contained sufficient evidence to decide her disability claims absent expert medical testimony because the record contained Williams' extensive medical history"). However, as one court of this district has observed:

> Remand is appropriate in several instances; for example where: (1) the ALJ seems
> to have failed to review particular medical findings that bear directly on whether a
> plaintiff is disabled, *Garcia v. Astrue*, 2011 U.S. Dist. LEXIS 25338, 2011 WL
> 899652, *14 (N.D. Ohio 2011); (2) the ALJ interpreted raw medical data on his
> own, rather than accepting medical opinions of record or consulting a ME, *Roso v.
> Comm'r of Soc. Sec.*, 2010 U.S. Dist. LEXIS 28308, 2010 WL 1254831, *13,
> adopted by 2010 U.S. Dist. LEXIS 28289, 2010 WL 1254833 (N.D. Ohio 2010);
> (3) where the ALJ noted clinical findings meeting a listing were present, but not

consistently present, *St. Clair v. Astrue*, 2010 U.S. Dist. LEXIS 87731, 2010 WL 3370568, *8 (N.D. Ohio 2010); or (3) the ALJ made an RFC determination in the absence of any medical opinion as to RFC, and without reviewing a substantial amount of the plaintiff's medical records, *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 911 (N.D. Ohio 2008).

*Young c. Comm'r of Soc. Sec.*, No. 1:10-cv-2900, 2012 WL 4505850, 2012 U.S. Dist. LEXIS 140015 (N.D. Ohio, Sep. 28, 2012) (Knepp, M.J.)

Here, the extensive medical record and a myriad of opinions concerning Plaintiff's functional limitations were sufficient for the ALJ to evaluate Plaintiff's conditions. Furthermore, as stated above, Plaintiff has failed to raise a "substantial question" as to whether he has satisfied any of the listings, and Plaintiff's primary argument in favor of an ME is that he believes one could have been helpful in evaluating the listings. This is mere conjecture. Further, "[f]or cases at the [ALJ] or Appeals Council level, the responsibility for deciding medical equivalence rests with the [ALJ] or Appeals Council." 20 C.F.R. § 416.926. In addition, despite Plaintiff's statement to the contrary, he points to no evidence that the ALJ was interpreting raw medical data or that the RFC determination was made in an absence of medical opinions. Given the abundance of medical records and medical opinion evidence contained in the record, this court cannot find that the ALJ abused his discretion by declining to call an ME to testify. *See Rudd v. Comm'r of Soc. Sec.*, 531 Fed. App'x 719, 726 (6th Cir. 2013) ("[T]he ALJ was not required to obtain a medical expert to interpret the medical evidence related to Rudd's impairments. In fact, the regulations require the ALJ to evaluate the medical evidence to determine whether a claimant is disabled.")

While undoubtedly an ME may be helpful in assisting an ALJ by providing additional information by virtue of his or her superior expertise on medical issues, this is true in every disability case. Given the fullness of the record, the ALJ did not abuse his discretion by opting

24

against the retention of an ME.

### 3. Treating Physician Rule

In the third and final assignment of error, Plaintiff asserts the ALJ erred by rejecting the opinions of his treating gastroenterologist, Dr. Yossef. (R. 10, PageID# 2038-2040). The Commissioner argues that Dr. Yossef's opinions that stated little more than that Plaintiff was disabled were properly rejected as in issue reserved for the Commissioner, while the ALJ gave good reasons for discounting the more comprehensive opinions. (R. 12, PageID# 2067-2069).

"Provided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ does not give a treating source's opinion controlling weight, then the ALJ must give good reasons for doing so that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (*quoting* Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5). The "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is "in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore might be especially bewildered when told by an administrative

bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson, 378 F.3d at 544* (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)); *see also Johnson v. Comm'r of Soc. Sec.*, 193 F. Supp. 3d 836, 846 (N.D. Ohio 2016) ("The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.") (Polster, J.)

It is well-established that administrative law judges may not make medical judgments. *See Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.") (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009). If fully explained with appropriate citations to the record, a good reason for discounting a treating physician's opinion is a finding that it is "unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." *Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) (*citing Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding that an ALJ properly discounted the subjective evidence contained in a treating physician's opinion because it too heavily relied on the patient's complaints).

First, the ALJ addressed Dr. Yossef's various opinions as follows:

> Dr. Sayed Yossef, the claimant's gastroenterologist, also provided several reports on the claimant. He provided an opinion regarding the claimant in April 2015. He opined the claimant was able to complete a sustained 8-hour workday, and did not

have any lifting or carrying limitations (Exhibit 18F/1). He also found no standing or walking limitations, unless the claimant had an exacerbation. He also found that the claimant did not have any sitting limits, and could sit for 8 hours in a workday, and walk/stand for 6 hours in a workday. He opined the claimant could occasionally climb, balance, kneel, crawl, stoop, and crouch (Exhibit 18F/2). He found no manipulative limitations, but did note that it would be difficult for him to be flexible due to pain. He opined the claimant should avoid heights, moving machinery, chemical, and fumes (Exhibit 18F/3).

This opinion is not entitled to controlling weight. Dr. Yossef has closely followed the claimant's pancreatitis and abdominal pain flares. However, due to his diabetic neuropathy, which Dr. Yossef does not treat the claimant for[,] I find that he has additional standing and walking limitations as well. Thus, I can afford only some weight to this opinion.

Dr. Yossef submitted a letter in May 2016, relaying that the claimant was "unable to work" (Exhibit 67F/4). He submitted another letter in July 2016. He noted the claimant's fecal incontinence, lymphocytic colitis, and pancreatitis. He noted the claimant was currently under treatment for these conditions, and would "not be able to work for six months" (Exhibit 45F/1). He again submitted this same letter in February 2017 (Exhibit 67F/1 ). This opinion is not entitled to controlling weight. A finding that an individual is "disabled" or "unable to work," is an administrative finding and is an issue reserved to the Commissioner (20 CFR 404.1527(e)(l) and 416.927(e)(l)). Medical opinions on these issues must not be disregarded; but cannot be entitled to controlling weight or even given special significance, even when offered by a treating source. Further, Dr. Yossef's own treatment records describe his symptoms as "diarrhea," not fecal incontinence. I afford these opinions little weight.

(Tr. 136-137).

First, as apparent from the ALJ's analysis above, Dr. Yossef offered numerous opinions with starkly contrasting limitations, yet Plaintiff's brief does not specify which opinions the ALJ improperly rejected.[9] The court further takes no issue with the ALJ's rejection of Dr. Yossef's brief opinions that stated no more than an opinion that Plaintiff was disabled or could not work along with a number of diagnoses, as those issues are indeed reserved to the Commissioner. It is

---

[9] The court presumes Plaintiff takes no issue with the ALJ according only "some weight" to Dr. Yossef's opinion from April of 2015 that indicated Plaintiff's impairments did not affect his ability to lift/carry, stand/walk, or sit. (Tr. 137, 1043-1045).

well settled that opinions regarding whether a claimant is disabled, even those from acceptable medical sources, do not constitute "medical opinions." Further, the question of whether a claimant is disabled is an issue expressly reserved for the Commissioner and does not constitute a medical opinion. 20 C.F.R. § 404.1527(d)(1)-(3) (an ALJ need "not give any special significance to the source of an opinion on issues reserved to the Commissioner…"); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6ᵗʰ Cir. 1986) (finding that the Commissioner is "not bound by a treating physician's conclusory statement). Moreover, the inclusion of the physician's diagnoses in those letters shed little light on the claimant's functional limitations supporting the opinion that Plaintiff cannot work. It is well established that a diagnosis alone does not indicate the functional limitations caused by an impairment. *See Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment).

With respect to the January 30, 2017 checklist questionnaire that included a number of checked boxes asserting the presence of a number of significant functional limitations, the ALJ addressed this opinion as follows:

> Dr. Yossef also filled out a form regarding the claimant in January 2017. He concluded the claimant could not complete an 8-hour workday, and could only lift less than 5 pounds for an hour each day (Exhibit 57F/ 1). He found the claimant would have standing and walking limits, depending on if he had an active flare, and could only sit, stand, and walk for an hour each during the workday (Exhibit 57F/2). He opined the claimant could occasionally climb, balance, kneel, crawl, bend, stoop, and crouch (Exhibit 57F/2). Dr. Yossef opined the claimant had limits in his ability to reach, handle, push, and pull, and would have restrictions regarding heights, moving machinery, temperature extremes and chemicals. He noted the claimant had acute on chronic pancreatitis, with frequent hospitalizations and chronic pain (Exhibit 57F/3). He concluded the claimant would miss work more than three times a month (Exhibit 57F/4).

> This opinion is also not entitled to controlling weight. This opinion is much more extreme, when compared to Dr. Yossef's April 2015 opinion. However, a review

> of the claimant's treatment notes does not indicate that the claimant's gastrointestinal condition worsened greatly during this time. The claimant does have abdominal pain flares, but he has reported them as intermittent. His most recent CT scan did not reveal any inflammatory changes. It is unclear why Dr. Yossef would find such harsh standing and walking limits, when the claimant did not indicate any issues with walking or standing in his treatment notes, and the claimant's functional capacity evaluation and regular walking for exercise suggests otherwise.

(Tr. 137).

Plaintiff's brief avers that "[o]ne of the reasons the ALJ refused to give controlling weight to the opinions of plaintiff's gastroenterologist is because Dr. Yossef's own treatment records describe plaintiff symptoms as 'diarrhea' and not 'fecal incontinence' and Dr. Yossef in a July 2016 letter noted that Mr. Keyser had fecal incontinence, lymphocytic colitis and pancreatitis." (R. 10, PageID# 2039, *citing* Tr. 139). However, the ALJ did not offer this reason as a basis for rejecting the opinions in the January 2017 checklist questionnaire. As stated above, the ALJ was not bound to accept the doctor's July 2016 assessment that Plaintiff could not work, as such an opinion is not a "medical opinion" under the regulations. Plaintiff also attempts to rebut the ALJ's observation that the January 2017 opinion is "more extreme" than the April 2015 opinion from the same physician by suggesting the greater limitations were based on Plaintiff's more recent diagnosis of colitis and resulting diarrhea. (R. 10, PageID# 2039). The ALJ, however, offered a number of other reasons for rejecting Dr. Yossef's January 2017 opinion, including the intermittent nature of Plaintiff's abdominal pain, lack of changes on the most recent CT scan, the lack of any observations in Dr. Yossef's treatment notes suggestive of standing or walking limitations, and Plaintiff's own activities. (Tr. 137). Plaintiff has failed to articulate how these reasons, taken as a whole, fail to satisfy the "good reasons" requirement of the treating physician rule. Therefore, Plaintiff's third assignment of error is without merit.

## VI. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be

AFFIRMED.

s/ *David A. Ruiz*

David A. Ruiz
United States Magistrate Judge

Date: July 9 , 2019

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.   *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).